STINCHCOMB v. CONNER.

No. 34039.    April 10, 1951.

*230 P. 2d 278.*

V. E. Stinchcomb, Oklahoma City, for plaintiff in error.

Leslie L. Conner, Oklahoma City, and Charles W. Conner (on the brief) Oklahoma City, for defendant in error.

JOHNSON, J. This is an appeal brought by Glenn C. Stinchcomb from a judgment of the trial court rendered in favor of plaintiff, Lee Conner, d/b/a Lee Conner's Equipment & Supply Company, in an action by the plaintiff to recover the purchase price of a pump, equipment and accessories, including an electric motor.

The defendant bases his defense on breach of implied warranty as to quality and fitness of the property sold.

Defendant in his answer admits the purchase of the pump and equipment as claimed by plaintiff, but pleads that such pump and equipment was new at the time he purchased the same, and that the purchase therefore carried with

it an implied warranty that the pump and equipment was capable of doing the work for which it was manufactured and sold.

After receiving the pump, installing it, and using it for a short period of time, the motor on the pump burned out, and the pump became completely useless. The motor was so defectively attached to the frame of the pump as to make it incapable of doing the work for which it was manufactured and sold. He then made an attempt to return the pump to plaintiff, which he refused to accept. He thereafter took the pump to plaintiff's place of business, and the same is now in his possession, and prays that plaintiff take nothing by his suit, and that he recover costs.

The parties waived a jury and the case was tried to the court, who, after hearing the evidence, rendered judgment in favor of plaintiff and directed plaintiff to return the pump to defendant.

Defendant has appealed and relies for reversal on the sole ground that the judgment is not supported by the evidence and is contrary to law.

This assignment makes a review of the evidence necessary. Defendant testified that he purchased the pump on the 27th day of March, 1947; that it was purchased for use in irrigating his trees and shrubbery. The pump was installed by him. It was installed on a boat dock of a lake about eighteen inches above the water, where it remained uncovered and unprotected. He started the motor and operated the pump for about one hour; he thereafter again started and operated it for about two hours. It then operated satisfactorily, and he so notified plaintiff and requested him to send a bill. Sometime thereafter, and in June, 1947, he again started to operate the pump. It ran about 15 minutes and then suddenly stopped. He then took the pump to an electrician in Bethany for repair. He did not then notify plaintiff of this condition. The electrician took the motor apart but did not work on it. Defendant then called plaintiff and notified him that the coil in the motor had burned out, and he could no longer use the pump. He then made an effort to return the pump to plaintiff, but plaintiff refused to receive it. On the 26th day of July he returned the pump to plaintiff's place of business. Plaintiff was not present at the time, but he left the pump with an employee of plaintiff with instructions to notify the plaintiff of its return. Plaintiff shortly thereafter demanded payment, and upon refusal brought this action.

The electrician, in substance, testified: He examined the motor and found that the number one coil in the motor was grounded to the frame; that on this particular motor the connection was welded to the frame; the insulation between the frame and the copper had given away and let the copper come in contact with the frame of the motor, the result being that being grounded to earth it would not run the maximum r.p.m., and the motor finally burned out. He further testified that the motor had been submerged in water. He did not know how long it had been submerged; that if the electricity had been turned on before the motor dried or if the coil had been saturated in water and the motor turned on while the coil was wet, it would cause the burning out of the coil. He did not know, however, whether this circumstance caused the failure of the motor. He further testified that the fact the motor was grounded to the frame might possibly cause the coil to burn out.

Plaintiff in rebuttal offered evidence as to the condition of the motor after it had been returned and as to circumstances tending to establish that the cause of the collapse of the motor was due to starting it while the coil was wet. His evidence in this respect, however, is merely corroborative of what

has been testified to by defendant's witnesses.

We think under the evidence the trial court was justified in finding in favor of plaintiff. It had before it the following facts: When the pump was first installed it operated satisfactorily; it was installed by defendant on a boat dock on a lake eighteen inches above the water; the pump and motor were left uncovered and unprotected. The coil in the motor would likely become saturated with water and remain in a wet condition. The pump and motor were at one time completely submerged in water. After the pump had been installed for about two months, and after it had been submerged in water, defendant again attempted to operate the pump. It ran for 15 minutes, and the motor suddenly failed. The starting of the motor while the coil is wet will cause it to burn up.

In our opinion, the court had a right to conclude from this evidence that the burning out of the coil was caused by starting the motor while the coil was wet, and that the failure of the motor was due to this cause and not to any mechanical defect in the construction of the pump and motor.

We cannot say that there is no competent evidence tending to support the judgment. It will not therefore be reversed by this court on appeal.

Affirmed.

ARNOLD, C.J., and CORN, GIBSON, DAVISON, HALLEY, and O'NEAL, JJ., concur.